**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

SADY BILBRUCK,

                               Plaintiff,

vs.

VALLEY COUNTY, LUKE STROMMEN,
& JOHN DOES 1-3,

                               Defendants.

**CV-21-40-GF-BMM**

**ORDER**

## INTRODUCTION

Plaintiff Sady Bilbruck ("Bilbruck") has filed motions for partial summary judgment related to issues of consent (Doc. 18; Doc. 52) and Defendant Luke Strommen's ("Strommen") prior conviction for sexual intercourse without consent with J.R. (Doc. 25.) Defendant Valley County ("Valley County") opposes those motions. (Doc. 67 at 1–2; Doc. 88 at 1; Doc. 65 at 2.) Strommen also opposes those motions. (Doc. 34 at 1; Doc. 86 at 1; Doc. 63 at 1.) Strommen has filed motions for partial summary judgment relating to Bilbruck's battery claim (Doc. 46) and the statute of limitations for Bilbruck's claims. (Doc. 43.) Bilbruck opposes those motions. (Doc. 77 at 1; Doc. 84 at 1.) The Court held a hearing on the motions on April 29, 2024. (Doc. 111.)

1

The Court recognizes that Plaintiff has another pending motion for partial summary judgment (Doc. 55) and Valley County has a pending motion for summary judgment. (Doc. 49.) The Court will address those motions, however, in a separate order.

## BACKGROUND

Strommen worked as a law enforcement officer for Valley County from 2009 until 2018. (Doc. 94 at 2.) Strommen encountered Bilbruck in December of 2013 while on duty in his capacity as a law enforcement officer. (Doc. 68-4 at 3.) Bilbruck was seventeen years old at the time. (Doc. 68-3 at 1.) Strommen detained Bilbruck and transported her to the detention center. (Doc. 87 at 2.) Bilbruck received citations for MIP, open container, possession of drug paraphernalia, and possession of dangerous drugs (marijuana). (*Id.* at 1–2.) Bilbruck obtained Strommen's phone number from Strommen's sister-in-law, with whom Bilbruck worked. Bilbruck texted Strommen to get her car keys back following her arrest. (Doc. 94-1 at 20.) Bilbruck and Strommen later began texting regularly. (*Id.*)

Strommen and Bilbruck engaged in a sexual relationship for several months. Strommen and Bilbruck had four sexual encounters. The first occurred in Strommen's wife's Jeep while Strommen was off duty. (Doc. 94-2 at 28, 67; Doc. 51 at 7.) The remainder allegedly occurred while Strommen was on duty in the following locations: (1) Bilbruck's car; (2) a remote hunting cabin; and (3)

2

Bilbruck's hotel room. (Doc. 51 at 8.) These sexual encounters involved Bilbruck performing oral sex on Strommen. (*Id.* at 7–8.) Strommen allegedly engaged in a sexual relationship with a fourteen-year-old girl, J.R., throughout his employment as well. (Doc. 94-4 at 2–3.)

Valley County Sheriff, Glen Meier, admitted that he had noticed that Strommen would disappear for long periods of time on shift, would visit the remote hunting cabin on shift, and failed to follow Meier's directives to put a tracking app on his phone so Meier could track his whereabouts. (Doc. 94-4 at 6, 12–13, 25.) Meier also admitted to receiving reports of inappropriate behavior including reports that Strommen sexually propositioned women during traffic stops, that a sheriff was engaged in a sexual relationship with a high school girl, and that Strommen had sexually assaulted a border patrol agent. (*Id.* at 6–8.) Valley County contends, however, that Sheriff Meier did not receive the complaints about Strommen until 2015 or 2016 and did not put together that Strommen was the "sheriff" reportedly having the sexual relationship with a minor util 2018. (*Id.* at 31–33, 35.)

The Department of Criminal Investigations ("DCI") investigated Strommen beginning in June of 2018. (*Id.* at 18.) Valley County terminated Strommen's employment on October 29, 2018. (*Id.* at 20.) Strommen pleaded guilty to sexual abuse of children for his possession of child sexual abuse material, consisting of a photograph of Bilbruck partially clothed. (Doc. 48-1.) A jury convicted Strommen

3

of sexual intercourse without consent for his conduct with J.R. *Montana v. Strommen*, 547 P.3d 1227, 1234 (Mont. 2024). The Montana Supreme Court recently overturned that conviction for violation of the confrontation clauses of the United States Constitution and the Montana Constitution. *Id.* at 1242–43.

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

## DISCUSSION

### I. Consent

Bilbruck seeks partial summary judgment on the issue of consent. (Doc. 19 at 1; Doc. 53 at 1.) Bilbruck acknowledges and admits that she was over the age of consent at the time of the sexual contact with Strommen. Bilbruck argues, however, that she proved incapable of consent under two statutory theories. Bilbruck first argues that she was on probation and under conditions of a Montana state court throughout the sexual contact with Strommen. (Doc. 19 at 3–4.) Bilbruck further contends that she proved incapable of consent because Strommen was investigating

4

her for criminal activity and using her as a confidential informant and witness. (Doc. 53 at 6–7.)

### a. Whether Bilbruck proved incapable of consent pursuant to Mont. Code Ann. § 45-5-501(1)(b)(v) because she was on probation or other court conditions

Section 45-5-501(1)(b)(v) of the Montana Code Annotated provides that a person proves incapable of consent if the person "is on probation, conditional release, or parole and the perpetrator is an employee, contractor, or volunteer of the supervising authority and has supervisory or disciplinary authority over the victim." Probation is defined as "(i) in the case of an adult offender, release without imprisonment of a defendant found guilty of a crime and subject to the supervision of a supervising authority; and (ii) in the case of a youth offender, supervision of the youth by a youth court." Mont. Code Ann. § 45-5-501(3)(c).

Strommen argues that a person can be "on probation" only if the offense for which they are arrested or sentenced can result in jail time. Strommen contends that a person cannot be "release[d] without imprisonment" as used in the definition of probation if no possibility of imprisonment exists in the first place. (Doc. 34 at 6.) Strommen argues that because the offenses of MIP and open container do not carry jail time as a possible punishment, Bilbruck cannot be considered on probation for these offenses.

5

Valley County and Strommen rely on the definition of probation set forth elsewhere in the Montana Code Annotated to argue that a person is "on probation" only if supervised by the Department of Corrections. (*Id.* at 7; Doc. 67 at 3.) This interpretation proves inaccurate, as the definition of probation set forth in the consent statute specifically pertains to persons subject to the "supervision of a supervising authority." Mont. Code Ann. § 45-5-501(3)(c)(i). The statute further defines supervising authority to include a court, youth court, county, or the Department of Corrections. Mont. Code Ann. § 45-5-501(3)(e).

The evidence demonstrates that at the time of the inappropriate sexual relationship between Strommen and Bilbruck, which occurred from January of 2014 to April of 2014, Bilbruck already had pleaded guilty to her MIP and open container charges in Valley County Justice Court. The Valley County Justice Court sentenced Bilbruck on December 30, 2013, to community service, a fine, and a drug/alcohol education class.

Bilbruck relies on the order from the Valley County Justice Court setting Bilbruck's bail and conditions of release to support her argument that she was under the supervision of the Valley County Justice Court. (Doc. 81 at 4.) This order states that violation of any of the conditions will subject Bilbruck to immediate arrest and bail in the amount of $2,500. Bilbruck's own deposition testimony undermines this argument, however, as Bilbruck admitted that she had never seen the order setting

6

bail and release conditions. (Doc. 68-1 at 14.) Bilbruck further admitted that she never reported to youth probation. (Doc. 68-1 at 7.) An affidavit from the only Youth Court probation officer confirms that Bilbruck was not under any formal youth probation. (Doc. 68-12 at 4.)

Bilbruck further has failed to demonstrate that Strommen had supervisory or disciplinary authority over her. Strommen worked as a sheriff's deputy. No doubt exists that Strommen possessed the authority to arrest Bilbruck if the Montana state court had issued a warrant or if Strommen developed probable cause that Bilbruck had committed a new offense. Strommen lacked authority, however, as an employee of the supervising authority. Strommen was not a Youth Court probation officer, was not designated as the person to whom Bilbruck had to report her community service, and otherwise remained uninvolved in the disposition of Bilbruck's case following Strommen's issuance of the citations.

Bilbruck also relies on the unknown disposition of her citations for possession of dangerous drugs and possession of drug paraphernalia to support her argument that Bilbruck was under the authority of the Youth Court. (Doc. 81 at 7.) Bilbruck's drug offenses represent possible jailable offenses, but it appears unclear what happened with Bilbruck's citations for these offenses. The evidence in the record shows that that Strommen wrote the citations. (Doc. 68-4 at 4–5.) The Youth Court appears never to have received these citations, however, and had no copies of them

or any record of their disposition. Receiving a citation for which Bilbruck would have reported to Youth Court proves insufficient to establish that Bilbruck was under the supervision of Youth Court. The record demonstrates that Youth Court never received these citations, never placed Bilbruck on conditions of release related to these citations, and never formally disposed of the citations. The record also fails to establish that Strommen worked as an employee of the Youth Court.

      Bilbruck has failed to show undisputed facts that would support a finding that she was on probation. Bilbruck failed to show that she was under the supervision of a supervising authority at the time that she engaged in a sexual relationship with Strommen. Bilbruck also has failed to show that Strommen was an employee of any authority that may have been supervising Bilbruck. Strommen's employment as a law enforcement officer with general arrest powers fails to meet the requirement that Bilbruck must show that Strommen was an employee of a supervising authority and had supervisory and disciplinary authority over her. Bilbruck has failed to demonstrate that she proved incapable of consent as a matter of law pursuant to Mont. Code Ann. § 45-5-501(1)(b)(v). The Court will deny this motion for summary judgment. (Doc. 18.)

### b. Whether Bilbruck proved incapable of consent under Mont. Code Ann. § 45-5-501(1)(b)(xi)

Section 45-5-501(1)(b)(xi) of the Montana Code Annotated provides that a person is incapable of consent if the person is "a witness in a criminal investigation or a person who is under investigation in a criminal matter and the perpetrator is a law enforcement officer who is involved with the case in which the victim is a witness or is being investigated." Bilbruck argues that she was both under investigation and a witness in a criminal investigation throughout the time that she engaged in a sexual relationship with Strommen. Bilbruck argues that law enforcement found a drill box containing drug residue during the traffic stop in December of 2013 and that Strommen had asked Bilbruck about the drill box after the conclusion of her MIP and open container charges. (Doc. 53 at 3, 6.) Bilbruck further argues that Strommen treated Bilbruck as a confidential informant. (*Id.* at 3–4, 7.) Bilbruck cites to areas in the record where Strommen admitted to asking Bilbruck for information about the drug scene in Glasgow and meeting up with her to obtain "intel." (*Id.* at 4.)

Valley County argues that the only time that Strommen said that Bilbruck was an informant was when he was lying to prevent DCI from learning about his sexual relationship with Bilbruck. (Doc. 88 at 6.) Valley County notes that such testimony clearly proves unreliable. (*Id.*) Strommen notes that the statute on which Bilbruck

9

relies for this theory of non-consent was not enacted until 2019 and thus, not in effect at the time of the sexual contacts. (Doc. 86 at 6–9.) Bilbruck acknowledges that the Montana Legislature added § 45-5-501(1)(b)(xi) in 2019, and that the statute in effect at the time of Strommen and Bilbruck's sexual relationship did not include such a provision. (Doc. 109 at 2.) Bilbruck argues, however, that a relationship between a law enforcement officer and a witness or informant always proved too coercive to be consensual and that the addition of § 45-5-501(1)(b)(xi) statutorily recognized that fact. (*Id.* at 2–3.)

Genuine issues of material fact exist as to whether Bilbruck was an informant or a witness in a criminal investigation. Some evidence in the record indicates that Bilbruck did not operate as a confidential informant and was not under investigation. Valley County has submitted affidavits from former Sheriff and Undersheriff Vernon Buerkle and Officer Chris Richter that no investigation occurred into the drill bit/drug box found in Bilbruck's car. (Doc. 96-10 at 3; Doc. 96-11 at 3.) Valley County also notes that Bilbruck never signed a confidential informant agreement. (Doc. 96-10 at 5; Doc. 96-14 at 7.) Bilbruck's parents would have had to agree to her acting as an official informant due to her minority, and it remains undisputed that her parents never agreed to such arrangement. (Doc. 96-10 at 5.) Bilbruck admitted in her deposition that she did not view herself as an informant, did not

10

provide specific names of people to investigate, and did not provide Strommen any information that would have led to drug busts. (Doc. 96-14 at 6, 8.)

Other evidence exists, however, to support Bilbruck's theory that Strommen used Bilbruck as a confidential informant. Strommen sent Bilbruck at least two text messages inquiring about apparently ongoing investigations. One text message asked about an abandoned vehicle. (Doc. 54-9 at 27.) The other text message asked Bilbruck to call Strommen because he "[n]eed[ed] some intel [f]rom [her]." (Doc. 54-9 at 13.) Strommen made conflicting statements about whether he used Bilbruck as an informant. Strommen described Bilbruck as someone that had information on the drug trade and other activities in town in one portion of his interview with DCI. (Doc. 54-13.) Strommen also described Bilbruck as an "off paper informant." (Doc. 54-12.) Strommen says in other portions of his interview, however, that Bilbruck was not an informant but a friend from whom he could hear rumors and "local buzz." (96-13 at 10.)

A factual dispute exists as to whether Bilbruck functioned as a confidential informant or witness in an investigation in which Strommen was involved. A factual dispute prevents summary judgment even if the Court applied the later enacted Mont. Code Ann. § 45-5-501(b)(1)(xi). The Court declines to grant summary judgment to Bilbruck on the issue of consent. The Court also will not grant summary judgment in favor of Strommen on the issue of consent.

As discussed more thoroughly below, a variety of factors could lead a jury to find consent or a lack thereof under the totality of the circumstances. These factors include Strommen's initial contact with Bilbruck through his position as a law enforcement officer, Bilbruck's prior characterization of the relationship, Bilbruck's age, Bilbruck's outstanding drug charges, Bilbruck sharing "intel" with Strommen, and Strommen's exploitation of his law enforcement position in other encounters. Factual disputes render summary judgment inappropriate. The Court will deny Bilbruck's second motion for summary judgment on the issue of consent. (Doc. 52.)

## II. Battery

Battery involves "an intentional contact by one person with the person of another which is harmful or offensive." *Saucier v. McDonald's Rests. of Mont. Inc.*, 179 P.3d 481, 494 (Mont. 2008). Bilbruck must establish the following elements to succeed on her battery claim: (1) Strommen acted intending to cause a harmful or offensive contact with Bilbruck and (2) harmful contact resulted from Strommen's conduct. *Point Serv. Corp. v. Myers*, 125 P.3d 1107, 1112 (Mont. 2005). "[E]ffective consent to such contact will bar recovery in tort." *Saucier*, 179 P.3d at 494.

Strommen argues that the Court must grant summary judgment on Bilbruck's claim because the solicitation of the photograph does not constitute a battery and because Bilbruck consented to all sexual contact. The Court agrees that the solicitation of the photograph cannot support Bilbruck's battery claim. The

12

solicitation of a photograph does not involve contact "by one person with the person of another." *Saucier*, 179 P.3d at 494.

The Court disagrees, however, that no genuine dispute of fact exists as to whether Bilbruck consented to the instances of physical sexual contact. Bilbruck was seventeen years old when she first met Strommen. Bilbruck met Strommen when Strommen, while on duty, detained Bilbruck, transported her in his law enforcement vehicle, and wrote her citations for drug and other offenses. (Doc. 87, ¶¶ 2–3; Doc. 96-13 at 2; Doc. 96-2; Doc. 96-16.) The inappropriate sexual relationship between Bilbruck and Strommen coincided with the time period during which Bilbruck was supposed to complete her community service and finish her alcohol education classes. (*See* Doc. 54-6 at 3; Doc. Doc. 54-9.) Bilbruck had unresolved drug charges stemming from citations issued by Strommen throughout this time as well. Evidence exists in the record that supports Bilbruck's contentions that Strommen had asked Bilbruck to provide information on the comings and goings of drugs in the area. (Doc. 54-13.) Evidence exists in the record as well that supports Bilbruck's contentions that her sexual relationship with Strommen resulted in a quid pro quo in which Strommen allegedly helped keep Bilbruck and her friends out of trouble. (Doc. 94-1 at 18–20.)

A jury could find a lack of consent despite Bilbruck's prior statements that she consented to the contact. Bilbruck has since retracted her statements regarding

13

consent. Bilbruck has submitted an expert psychological report on the inability of childhood sexual abuse victims to recognize the sexual contact as abuse. (Doc. 77-1 at 4.) Bilbruck has submitted evidence of the context and circumstances surrounding the sexual contact that could support a finding of no consent. Viewing all of the circumstances, a jury could find a lack of consent. A genuine dispute of material fact exists on the issue of consent. Summary judgment proves inappropriate where material factual issues remain in dispute. The Court will deny Strommen's motion for partial summary judgment regarding Bilbruck's battery claim. (Doc. 46.)

### III. Statute of Limitations

Strommen seeks summary judgment that the statutes of limitations bar Bilbruck's claims for battery and intentional infliction of emotional distress ("IIED"). (Doc. 44 at 3–4.) Strommen further argues that Montana's three-year statute of limitations for personal injury actions bars Bilbruck's § 1983 claim. (*Id.*) Strommen acknowledges the expanded statute of limitations for claims involving childhood sexual abuse. (*Id.* at 4.) Strommen argues, however, that none of Bilbruck's claims constitute claims related to childhood sexual abuse because Bilbruck consented to the sexual contact. (*Id.* at 4–7.)

Federal law borrows the statute of limitations for personal-injury actions provided under state law for § 1983 actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Owens v. Okure*, 488 U.S. 235, 240–41 (1989). Montana law provides a

14

general statute of limitations of three years for personal injury actions. Mont. Code Ann. § 27-2-204(1). This general statute of limitations applies to claims for intentional infliction of emotional distress. *Id.* Montana law provides a specific statute of limitations of two years for battery. Mont. Code Ann. § 27-2-204(3). Montana law tolls that statute of limitations where a person is a minor when the cause of action accrues. Mont. Code Ann. § 27-2-401(1). The statute of limitations remains tolled until the person reaches the age of majority. *See Estate of McCarthy v. Montana Second Judicial Dist. Court*, 994 P.2d 1090, 1092 (Mont. 1999). Montana law further extends the statute of limitations for "action[s] based on intentional conduct brought by a person for recovery of damages for injury suffered as a result of childhood sexual abuse against the individual who committed the acts." Mont. Code Ann. § 27-2-216(1). The law provides that a claimant must bring such claims "before the victim of the act of childhood sexual abuse that is alleged to have caused the injury reaches 27 years of age." Mont. Code Ann. § 27-2-216(1)(a).

It proves undisputed that the sexual contact between Strommen and Bilbruck occurred from January of 2014 to April of 2014. (Doc. 78 at 2.) It remains undisputed that Bilbruck turned 18 in August of 2014. This case was filed on April 12, 2021. Bilbruck was 24 years old when she filed this action. The statute of limitations does not bar Bilbruck's claims if Mont. Code Ann. § 27-2-216(1)(a) applies. The statute

15

of limitations will bar Bilbruck's battery, IIED, and § 1983 claims, however, if Mont. Code Ann. § 27-2-216(1) does not apply.

Section 27-2-216(2) defines "childhood sexual abuse" to include "any act committed against a plaintiff who was less than 18 years of age at the time the act occurred" and that would have been a violation of one of the following:

   a. 45-5-502 (sexual assault);
   b. 45-5-503 (sexual intercourse without consent);
   c. 45-5-504 (indecent exposure);
   d. 45-5-507 (incest);
   e. 45-5-508 (aggravated sexual intercourse without consent);
   f. 45-5-625 (sexual abuse of children);
   g. 45-5-627 (ritual abuse of minors);
   h. 45-5-702 (sex trafficking)];
   i. 45-5-705 (patronizing a victim of sex trafficking);
   j. 45-5-706 (aggravated sex trafficking);
   k. 45-5-711 (child sex trafficking); or
   l. Prior similar laws in effect at the time the act occurred.

Mont. Code Ann. § 27-2-216(2). Strommen argues that Bilbruck's battery claim represents the only allegation that would fall within the definition of childhood sexual abuse. (Doc. 98 at 3.) Strommen further argues that Bilbruck's claim of battery fails because Bilbruck cannot show that she was on probation at the time of her sexual contact with Strommen. Strommen's argument misconstrues what Bilbruck needs to prove. Even accepting as true that Bilbruck's only allegation of childhood sexual abuse is battery, Bilbruck does not have to prove an inability to

16

consent under the law. The jury may determine Bilbruck's lack of consent "based on all of the surrounding circumstances." Mont. Code Ann. § 45-5-501(1)(a)(iii).

Bilbruck stated throughout the DCI investigation that the contact proved consensual. The Court acknowledges that these statements may make it difficult for Bilbruck to prove a lack of consent. The Court must view the evidence in the light most favorable to Bilbruck at this stage. A jury could find that Bilbruck did not consent to the sexual relationship based on Bilbruck's age, Strommen's prior detention of Bilbruck, the unknown disposition of Bilbruck's drug charges, Strommen's alleged help in keeping Bilbruck out of trouble, and Strommen's repeated contact with Bilbruck while on duty and in uniform. A question exists whether Bilbruck consented to the contact. Bilbruck alleges conduct that would have violated Mont. Code Ann. § 45-5-503. Bilbruck's claim for battery constitutes a claim for recovery for injuries resulting from childhood sexual abuse.

The Court also notes that Bilbruck's complaint outlines two types of sexual abuse: "sexual contact and directing [Bilbruck] (a minor) to send [Strommen] sexually explicit images." (Doc. 1 at 3.) Bilbruck asserts this sexual abuse as grounds for her § 1983 claim. (*Id.* at 4.) Bilbruck also refers back to the sexual abuse when pleading her IIED claim. (*Id.* at 9–10.) Strommen pleaded guilty to a violation of Mont. Code Ann. § 45-5-625(1)(e) (2013) with respect to Bilbruck. Section 27-2-216(2) specifically contemplates a violation of Mont. Code Ann. § 45-5-625 as

childhood sexual abuse. Bilbruck's claims for recovery, including her IIED claim and § 1983 claim, seek "damages for injury suffered as a result of childhood sexual abuse." Mont. Code Ann. § 27-2-216(1). Accordingly, the extended statute of limitations set forth in Mont. Code Ann. § 27-2-216(1) applies. Bilbruck's claims prove timely under that extended statute of limitations. The Court will deny Strommen's motion for summary judgment on the statute of limitations. (Doc. 42.)

## IV. Collateral estoppel / Res Judicata

Bilbruck seeks summary judgment that res judicata bars Strommen and Valley County from relitigating (1) whether Strommen raped J.R. and (2) whether that rape took place regularly and while Strommen was on duty. (Doc. 83 at 2.) Bilbruck notes that part of her claims against Valley County rely on Bilbruck establishing that Valley County knew or should have known about Strommen's inappropriate behavior. (*Id.*) Bilbruck argues that the jury verdict against Strommen on the charge of sexual intercourse without consent demonstrates that such inappropriate behavior was ongoing throughout Strommen's employment. (*Id.* at 3.)

A federal court determining the preclusive effect of a state court judgment must apply state preclusion law. *Dauven v. United State Bancorp*, 390 F. Supp. 3d 1262, 1276 (D. Or. 2019). "[C]ollateral estoppel prohibits the litigation of an issue in a civil trial that has been litigated in a prior criminal trial." *Estate of Eide v. Tabbert*, 900 P.2d 292, 295 (Mont. 1995). For collateral estoppel to apply, the party

asserting the doctrine must establish the following: "(1) the issue decided in the prior action was identical to that in the present action; (2) a final judgment on the merits was rendered in the prior action; and (3) the party against whom the doctrine is invoked was a party, or in privity with a party, in the prior action." *Id.*

The Court notes that Strommen's conviction for sexual intercourse without consent relating to J.R. has been reversed by the Montana Supreme Court since the filing of Bilbruck's motion. The Montana Supreme Court has vacated the jury verdict on which Bilbruck's motion relies. No final judgment on the merits exists for that offense. The Court accordingly must deny Bilbruck's motion regarding the preclusive effect of the jury verdict (Doc. 25) given that the Montana Supreme Court has vacated such verdict.

## CONCLUSION

The Court will deny Bilbruck's motions for partial summary judgment on consent. (Doc. 18; Doc. 52.) The Court also will deny Strommen's motion for partial summary judgment on Bilbruck's battery claim. (Doc. 46.) A genuine dispute of material facts exists as to whether Bilbruck consented to the sexual contact with Strommen. Summary judgment on those issues proves inappropriate. The Court also will deny Strommen's motion for summary judgment on the statute of limitations. (Doc. 43.) The extended statute of limitations provided for in Mont. Code Ann. § 27-2-216(1) applies. Finally, the Court denies Bilbruck's motion for partial summary

judgment on the preclusive effect of the jury verdict in Strommen's case involving J.R. (Doc. 25), as that jury verdict has since been vacated.

## ORDER

Accordingly, **IT IS ORDERED**:

1. Bilbruck's Motion for Partial Summary Judgment on Consent (Doc. 18) is **DENIED**.

2. Bilbruck's Second Motion for Partial Summary Judgment on Consent (Doc. 52) is **DENIED**.

3. Strommen's Motion for Partial Summary Judgment on Bilbruck's Claim for Battery (Doc. 46) is **DENIED**.

4. Strommen's Motion for Partial Summary Judgment on the Statute of Limitations (Doc. 43) is **DENIED**.

5. Bilbruck's Motion for Partial Summary Judgment on Res Judicata (Doc. 25) is **DENIED**.

DATED this 26th day of June, 2024.

_____
Brian Morris, Chief District Judge
United States District Court