IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| SADY BILBRUCK,<br><br>        Plaintiff,<br><br>vs.<br><br>VALLEY COUNTY, LUKE STROMMEN, & JOHN DOES 1-3,<br><br>        Defendants. | CV-21-40-GF-BMM<br><br>ORDER |

**INTRODUCTION**

Plaintiff Sady Bilbruck ("Bilbruck") has filed a motion for partial summary judgment on the application of § 214 of the Restatement of Agency. (Doc. 55.) Defendant Valley County ("Valley County") opposes this motion. (Doc. 90 at 1.) Valley County has filed a motion for summary judgment. (Doc. 49.) Bilbruck opposes that motion. (Doc. 93 at 1.) The Court held a hearing on all the motions on April 29, 2024. (Doc. 111.)

**BACKGROUND**

Strommen worked as a law enforcement officer for Valley County from 2009 until 2018. (Doc. 94 at 2.) Strommen encountered Bilbruck in December of 2013 while on duty in his capacity as a law enforcement officer. (Doc. 68-4 at 3.) Bilbruck was seventeen years old at the time. (Doc. 68-3 at 1.) Strommen detained Bilbruck

1

and transported her to the detention center. (Doc. 87 at 2.) Bilbruck received citations for MIP, open container, possession of drug paraphernalia, and possession of dangerous drugs (marijuana). (*Id.* at 1–2.) Bilbruck obtained Strommen's phone number from Strommen's sister-in-law, with whom Bilbruck worked. Bilbruck texted Strommen to get her car keys back following her arrest. (Doc. 94-1 at 20.) Bilbruck and Strommen later began texting regularly. (*Id.*)

Strommen and Bilbruck engaged in a sexual relationship for several months. Strommen and Bilbruck had four sexual encounters. The first occurred in Strommen's wife's Jeep while Strommen was off duty. (Doc. 94-2 at 28, 67; Doc. 51 at 7.) The remainder allegedly occurred while Strommen was on duty in the following locations: (1) Bilbruck's car; (2) a remote hunting cabin; and (3) Bilbruck's hotel room. (Doc. 51 at 8.) These sexual encounters involved Bilbruck performing oral sex on Strommen. (*Id.* at 7–8.) Strommen allegedly engaged in a sexual relationship with a fourteen-year-old girl, J.R., throughout his employment as well. (Doc. 94-4 at 2–3.)

Former Valley County Sheriff, Glen Meier, admitted that he had noticed that Strommen would disappear for long periods of time on shift, would visit a remote hunting cabin on shift, and failed to follow Sheriff Meier's directives to put a tracking app on his phone so Sheriff Meier could track his whereabouts. (Doc. 94-4 at 6, 12–13, 25.) Sheriff Meier also admitted to having received reports of

inappropriate behavior including reports that Strommen sexually propositioned women during traffic stops, that a sheriff was engaged in a sexual relationship with a high school girl, and that Strommen had sexually assaulted a border patrol agent. (*Id.* at 6–8.) Valley County contends, however, that Sheriff Meier did not receive the complaints about Strommen until 2015 or 2016 and did not put together that Strommen was the "sheriff" reportedly having the sexual relationship with a minor until 2018. (*Id.* at 31–33, 35.)

The Department of Criminal Investigations ("DCI") investigated Strommen beginning in June of 2018. (*Id.* at 18.) Valley County terminated Strommen's employment on October 29, 2018. (*Id.* at 20.) Strommen pleaded guilty to sexual abuse of children for his possession of child sexual abuse material, consisting of a photograph of Bilbruck partially clothed. (Doc. 48-1.) A jury convicted Strommen of sexual intercourse without consent for his conduct with J.R. *Montana v. Strommen*, 547 P.3d 1227, 1234 (Mont. 2024). The Montana Supreme Court recently overturned that conviction for violation of the confrontation clauses of the United States Constitution and the Montana Constitution. *Id.* at 1242–43.

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the

outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

### I. Section 214 Agency

The Montana Supreme Court has adopted § 214 of the Restatement Second of Agency. *Paull v. Park County*, 218 P.3d 1198, 1205 (Mont. 2009). Section 214 of the Restatement Second of Agency provides as follows:

> [a] master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such others from harm caused to them by the failure of such agent to perform the duty.

*Id.* at 1205. Section 214 operates as an exception to the general rule that an employee must be acting within the scope of employment for the employer to be liable for the employee's conduct. *Smith v. Ripley*, 446 F. Supp. 3d 683, 688 (D. Mont. 2020). Section 214 holds employers liable for actions taken by an employee outside the scope of their employment where the employer maintains a non-delegable duty. *Id.*

The Montana Supreme Court has applied the exception where an agent's deliberate reckless driving during the transportation of a prisoner resulted in harm to the prisoner. *Paull*, 218 P.3d at 1205. Section 214 also has been applied where a child protection specialist raped a mother subject to abuse and neglect proceedings, *Smith v. Ripley*, 446 F. Supp. 3d at 690–92, and where a railroad sleeper car attendant

4

raped a passenger. *Shepherd v. Amtrack*, CV 17-40-GF-BMM, 2018 U.S. Dist. LEXIS 226726, at *4–5 (D. Mont. Aug. 15, 2018). *Shepherd* turned primarily on the railroad's duty as a common carrier. *Id. Smith* and *Paull* relied heavily on the significant and continuing relationship between the employer and the victim of the agent's conduct. *Smith*, 446 F. Supp. 3d at 691, n.5; *Paull*, 218 P.3d at 1205.

Bilbruck argues that Valley County had a non-delegable duty to protect Bilbruck. (Doc. 56 at 2.) Bilbruck relies on Mont. Code Ann. § 45-5-501(1)(b)(v), (xi) to argue that Valley County owed Bilbruck a non-delegable duty of protection. (*Id.*) Bilbruck relies on these same statutes in her motions for partial summary judgment on the issue of consent. Valley County argues that factual issues material to the application of Mont. Code Ann. § 45-5-501(1)(b)(v), (xi) remain in dispute. (Doc. 90 at 3.)

The Court already has found that genuine issues of material fact exist as to the issue of consent and application of Mont. Code Ann. § 45-5-501(1)(b)(v), (xi). (*See* Doc. 120 at 5–14.) Genuine factual questions exist as to whether Bilbruck was on probation, acting as a witness, or under investigation. Bilbruck has failed to demonstrate the type of continuing relationship present in *Paull* and *Smith*. Bilbruck has failed to demonstrate that Valley County owed her a non-delegable duty. The Court declines to award summary judgment on the application of § 214 where

5

material facts remain in dispute as to the relationship, if any, between Valley County and Bilbruck.

## II. Valley County's Motion for Summary Judgment

Valley County has moved for summary judgment on all of Bilbruck's claims. (Doc. 50 at 7.) Valley County makes four major arguments in support of its motion for summary judgment. First, Valley County contends that Valley County cannot be liable because Strommen acted wholly outside his employment as a law enforcement officer. (*Id.* at 9–11.) Second, Valley County argues that the conduct between Strommen and Bilbruck proved consensual. (*Id.* at 11–14.) Third, Valley County contends that Bilbruck's § 1983 claim must fail because no policy or practice existed that resulted in the violation of Bilbruck's rights. (*Id.* at 20–26.) Finally, Valley County contends that Bilbruck's negligence claims fail both on the facts and under the public duty doctrine. (*Id.* at 26–31.)

### a. Respondeat Superior

"[T]he common law doctrine of respondeat superior imposes vicarious liability on employers for the tortious conduct of employees committed while acting *within* the scope of their employment." *L.B. v. United States*, 515 P.3d 818, 822 (Mont. 2022) (emphasis added). "A tortious act occurs within the scope of employment if the act was either expressly or implicitly authorized by the employer or was incidental to an expressly or implicitly authorized act." *Id.* (citing *Brenden v. City of Billings*, 470 P.3d 168, 172 (Mont. 2020)). An act may fall within the scope

6

of employment "if the act was incidental to the performance of an authorized act and at least partially motivated by the employee's intent or purpose to serve the employer's interest." *L.B.*, 515 P.3d at 822. "Characterization of the act as unauthorized does not necessarily place an officer's sexual assault outside the sphere of employee actions for which the employer may be liable." *Id.*

Valley County relies heavily on *Maguire v. Montana*, 835 P.2d 755 (Mont. 1992), to argue that rape proves outside the scope of employment even if committed in the workplace. (Doc. 50 at 10.) Valley County suggests that the Court is bound by its statement in *Smith* that "[r]ape is outside the scope of employment, even if it occurs in the workplace and under conditions conducive to predatory conduct." *Smith*, 446 F. Supp. 3d at 687. Valley County's argument ignores the Montana Supreme Court's recent determination in *L.B.* that "*Maguire* does little to inform the scope of a law enforcement officer's employment." 515 P.3d at 826. The Montana Supreme Court expressly noted in *L.B.* that "the scope of employment was not at issue in *Maguire*" and that "the Court [in *Maguire*] did not meaningfully consider factors relevant to determining whether a tortious act fell outside the scope of employment." *L.B.*, 515 P.3d at 826.

The Montana Supreme Court in *L.B.* determined that a jury could find that a law enforcement officer is acting within the scope of his employment when he obtained sex from a woman in exchange for not charging the woman with a crime.

515 P.3d at 825. The law enforcement officer in L.B. was dispatched to investigate a DUI involving L.B.'s mother. *Id.* The officer responded to L.B.'s home, took L.B. outside to perform a breathalyzer, threatened to arrest her, and threatened to have social services remove L.B.'s children from her care. *Id.* The law enforcement officer then repeatedly said that "something had to be done." *Id.* at 821. L.B. asked the officer if he meant sex, to which he responded affirmatively. *Id.* The Montana Supreme Court determined that "[e]ven if some of [the officer's] motive was 'self-interest,' he was there to investigate the interests of his employer—acting as an officer and agent of the BIA investigating a crime—when he used his employer-conferred powers to sexually assault L.B." *Id.* at 825.

The Montana Supreme Court designated the following factors as relevant in considering whether an employee is acting incidental to conduct authorized by their employment:

    (a)    whether or not the act is one commonly done by such servants;
    (b)    the time, place and purpose of the act;
    (c)    the previous relations between the master and the servant;
    (d)    the extent to which the business of the master is apportioned between different servants;
    (e)    whether the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
    (f)    whether or not the master has reason to expect that such an act will be done;
    (g)    the similarity in quality of the act done to the act authorized;
    (h)    whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
    (i)    the extent of departure from the normal method of accomplishing an authorized result; and

    (j)    whether or not the act is seriously criminal.

*L.B.*, 515 P.3d at 824.

No question exists that Strommen came into contact with Bilbruck while performing his employment duties and carrying on activities typical of law enforcement officers. A question remains whether his continued relationship with Bilbruck after that point was outside the scope of his employment. The Court, in applying Montana law, must look to the factors outlined in *L.B.* The Court finds that at least some of these factors weigh in favor of finding that Strommen was acting incidental to his employment duties.

For example, Bilbruck alleges and Strommen admitted at one point that Strommen used Bilbruck like a confidential informant. Text messages from Strommen about needing "intel" and asking about an abandoned vehicle lend some support to these allegations. (Doc. 51-7 at 13.) Vernon Buerkle's testimony that he knew Strommen used Bilbruck as an informant similarly supports this allegation. (Doc. 94-4 at 28.) Cultivating confidential informants represents a task commonly undertaken by law enforcement officers. Bilbruck also alleges that Strommen took a call related to Bilbruck crashing her car and delayed his response to the incident to allow Bilbruck time to leave the scene. (Doc. 94-1 at 19.) Responding to calls represents a task commonly undertaken by law enforcement officers. Bilbruck alleges that the sexual contact between her and Strommen occurred incidental to acts

commonly performed by law enforcement officers and that fall within the purview of a sheriff's department's business in enforcing the law and investigating criminal activity.

The time and place of Strommen's and Bilbruck's contacts also weigh in favor of finding that Strommen was acting incidental to his employment. All but one of the sexual encounters are alleged to have occurred while Strommen was on duty. Text messages indicating that they would meet up while he is working support these allegations. (Doc. 51-7 at 43–45.) Other text messages display a signature of "Deputy Luke Strommen" and others clearly refer to Strommen being at the office and working. (*Id.* at 4–8, 17–18, 61, 100.) Bilbruck contends that Strommen was in uniform and driving his patrol vehicle for all but the first encounter and actually received a call out in the middle of one of their sexual encounters. (Doc. 94-1 at 26.)

The timing of the sexual relationship proves important. Strommen and Bilbruck began texting so Bilbruck could retrieve her car keys, as Strommen and other deputies had seized her keys the night that Strommen had detained and cited Bilbruck. (*Id.* at 20.) Strommen personally delivered the keys to her. (*Id.*) Strommen and Bilbruck began having sexually explicit conversation and encounters less than one month after Strommen detained Bilbruck. This contact continued throughout the time that Bilbruck was ordered to perform her community service.

The evidence presented by Bilbruck also lends some support to her contention that Valley County was on notice of Strommen's inappropriate activities. Sheriff Meier reported that he had received a letter within the first two years of Strommen's employment that a sheriff was having sex with an underage girl. (Doc. 94-4 at 7.) Sheriff Meier also testified that he had heard a sheriff's deputy was taking girls out to Uncle Fester's Pheasant Farm within the first three or four years of Strommen's employment, which would have been 2012 or 2013. (*Id.* at 11.) Sheriff Meier also testified that he believed he had heard around 2014 that Strommen had propositioned Bilbruck for sex after a traffic stop. (*Id.* at 16.) Sheriff Meier testified that Strommen would disappear for long periods while on shift throughout his career. (*Id.* at 25.) This evidence proves relevant to "the previous relations between the master and the servant" factor.

The Montana Supreme Court has recognized that "the job duties of law enforcement officers include initiating nonconsensual, and at times invasive, physical contact with members of the public pursuant to law enforcement goals." *L.B.*, 515 P.3d at 824. "[T]he scope of a police officer's employment contemplates physical contact, whether wrongfully or appropriately exercised." *Id.* at 825. The Montana Supreme Court also has recognized the "considerable and intimidating powers" of a law enforcement officer that create "an inherent risk of abuse." *Id.* The question the Court must determine in addressing this motion for summary judgment

is whether Strommen's sexual encounters and relationship with Bilbruck prove "so disconnected from his employment activities that a trier of fact could not find that his wrongful conduct arose out of and was committed in furtherance of" Strommen's investigation into criminal activities for Valley County. *L.B.*, 515 P.3d at 825. The Court finds that Strommen's conduct was not so disconnected from his employment as to warrant deciding this question for the jury.

The scope of employment inquiry "must focus on the nature of the employment and how the employment relates to the context in which the commission of the wrongful act arose." *L.B.*, 515 P.3d at 823. The Court must view the evidence in the light most favorable to Bilbruck. Bilbruck has presented evidence that Strommen engaged in the sexual contact while on duty and in uniform after having detained and cited Bilbruck just a month earlier. Evidence exists to support Bilbruck's contention that Strommen used Bilbruck to discover information about drug activity in the area. Bilbruck further has presented evidence that the relationship continued throughout the time period that the Valley County Justice Court gave Bilbruck to complete her sentence for the citations that Strommen issued her. Sufficient disputes of material fact exist to render summary judgment inappropriate.

### b. Consent

The Court already has determined that a genuine issue of material fact exists as to whether Bilbruck consented to the sexual contact with Strommen. (Doc. 120 at

4–14.). The Court also notes that Valley County's own investigation into the relationship between Strommen and Bilbruck produced the following determination: "[w]ith this type of imbalance of power it creates a situation where it is most unlikely the child could have willing knowledgeable sexual consent." (Doc. 51-14 at 7.) Genuine disputes of material fact as to the issue of consent renders summary judgment on the basis of consent inappropriate. The Court denies this ground for Valley County's motion.

### c. Section 1983

To succeed on a § 1983 claim against a local government, a plaintiff must prove: (1) he/she was deprived of a constitutional right, (2) the local government had a pattern, practice, custom, or informal policy, (3) that policy amounted to deliberate indifference to the plaintiff's constitutional right, and (4) adhering to that pattern, practice, custom, or informal policy caused the constitutional violations. *Breton v. Lake Cnty.*, 2022 U.S. Dist. LEXIS 223728, at *12 (D. Mont. Dec. 12, 2022) (citing *Lockett v. Cnty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020)).

Valley County alleges that Bilbruck's failure to train claim must fail because Bilbruck has failed to identify any specific deficiency in training that resulted in Bilbruck's harm. (Doc. 50 at 23.) The Court agrees. "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into

contact." *Flores v. County of L.A.*, 758 F.3d 1154, 1158 (9th Cir. 2014) (internal citations omitted). A "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1159. Bilbruck fails to show a pattern of sexual misconduct by any other deputies.

Bilbruck's response to Valley County's motion failed to address the failure to train aspect of her § 1983 claim, let alone identify any specific deficiency in Strommen's training that can be said to have caused the alleged sexual abuse. Reason exists "to assume that police academy applicants are familiar with the criminal prohibition on sexual assault." *Id.* "There is no basis from which to conclude that the unconstitutional consequences of failing to train police officers not to commit sexual assault are so patently obvious that [Valley County was] deliberately indifferent." *Id.* Bilbruck has failed to identify any specific shortcoming of Valley County's training of its law enforcement officers. Bilbruck also has failed to show how such deficiency in training caused the harm in this case. The Court will grant summary judgment to Valley County on Bilbruck's failure to train theory of her § 1983 claim.

Valley County further alleges that Bilbruck's § 1983 claim must fail because Bilbruck has not demonstrated Valley County's knowledge of, or indifference to, sexual assault allegations. Valley County cites *Cloes v. City of Mesquite*, 582 Fed. App'x 721 (9th Cir. 2014) to support their argument. (Doc. 120 at 25–26.) The Ninth

Circuit determined in *Cloes* that the claimant had failed to show a widespread policy of ignoring sexual assault allegations against its officers. *Cloes*, 582 Fed. App'x at 723–24. The Ninth Circuit noted that the officer's ex-wife had made a verbal complaint of sexual assault the year earlier but refused to make a formal complaint and later requested that any investigation be closed. *Id.* The claimant then made a verbal complaint and refused to make an informal complaint. *Id.* at 724. The Ninth Circuit expressed doubt that these facts could satisfy the showing of a policy of indifference to such allegations. *Id.* More importantly, the Ninth Circuit noted that the law enforcement department immediately referred the claimant's complaint for investigation such that any practice the law enforcement may have had in ignoring complaints did not affect the claimant or her rights *Id.*

Sufficient evidence exists upon which a jury could find that Valley County acted with deliberate indifference in failing to investigate reports of sexual misconduct. Sheriff Meier reported that he had received a letter within the first two years of Strommen's employment that a sheriff was having sex with an underage girl. (Doc. 94-4 at 7.) Sheriff Meier also testified that he had heard a sheriff's deputy was taking girls to Uncle Fester's Pheasant Farm within the first three or four years of Strommen's employment, which would have been 2012 or 2013. (*Id.* at 6, 11.) Sheriff Meier also testified that he believed he had heard around 2014 that Strommen had propositioned Bilbruck for sex after a traffic stop. (*Id.* at 16.) Sheriff Meier has

since filed an affidavit that largely contradicts this testimony. (Doc. 31-1.) The dispute and contradictions within Sheriff Meier's own testimony supports a determination that a dispute of material fact exists that prevents summary judgment.

Sheriff Meier also testified that Strommen would disappear for long periods while on shift throughout his career. (*Id.* at 25.) Sheriff Meier testified that Strommen frequently lied and that he did not trust Strommen. Sheriff Meier admitted that he had heard that a deputy was taking girls out to Uncle Fester's Pheasant Farm and having sex with them. (*Id.* at 6.) Sheriff Meier knew Uncle Fester's Pheasant Farm was owned by one of Strommen's friends. (*Id.*) Sheriff Meier testified that he had confronted Strommen about going to Uncle Fester's Pheasant Farm while on shift. (*Id.*) Strommen allegedly admitted to having gone there on shift. (*Id.*) Sheriff Meier appears to have failed to inquire further as to whether the remaining allegations regarding sexual abuse proved true. Sheriff Meier further admitted that he never investigated the allegations or talked with any school children or teachers about them because he wanted to protect his guys from "rumors."

"Normally, the question of whether a policy or custom exists would be a jury question." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996). Sufficient evidence exists from which a reasonable jury could find that Valley County had a pattern, practice, custom, or informal policy of ignoring complaints of sexual misconduct and that such policy amounted to deliberate indifference. The contradictions in

16

Sheriff Meier's testimony and affidavits alone demonstrate factual issues that require submission of the issue to a jury.

### d. Negligence

Valley County argues that the public-duty doctrine bars Bilbruck's negligence claims. (Doc. 50 at 26–28.) "[T]he public-duty doctrine does not apply simply because the defendant is a government officer or agency." *Bassett v. Lamantia*, 417 P.3d 299, 308 (Mont. 2018). The public-duty doctrine proves inapplicable "where the alleged duty breached is not one of a general duty to protect and preserve the peace." *Id.* at 309. The public-duty doctrine applies where a person is harmed by law enforcement's failure to protect the person from a third-party or failure to generally preserve the peace. *See id.* at 306–07. Bilbruck's claims do not stem from the general duty to protect the public and preserve the peace. Bilbruck's claims stem from the affirmative conduct of Strommen when acting as a law enforcement officer for Valley County. Bilbruck's claims further stem from Valley County's alleged failure to act reasonably in supervising and hiring law enforcement officers. The public-duty doctrine does not apply to such claims.

Valley County also argues that the undisputed facts entitle Valley County to summary judgment on Bilbruck's negligence claims. The Court disagrees. Genuine disputes of material fact exist as to the issue of negligence. Bilbruck has submitted evidence from two experts regarding the deviation from the standard of care in the

hiring and supervision of Strommen. Claimants need only meet a low burden to avoid summary judgment. The contradictions in Sheriff Meier's testimony and affidavits and the expert reports meet that low burden for establishing a material factual dispute that must be resolved by the jury.

That material factual dispute further prevents summary judgment on the issue of punitive damages. "[R]easonable punitive damages may be awarded when the defendant has been found guilty of actual fraud or actual malice." Mont. Code Ann. § 27-1-221(1). Actual malice exists if the following two elements are met:

(a) if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff; and
(b) the defendant:
   (i) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
   (ii) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Mont. Code Ann. § 27-1-221(2). A reasonable jury could find that Valley County had knowledge of Strommen's sexual conduct and inappropriate contact with young girls based on the testimony of Sheriff Meier and Bilbruck's testimony regarding the circumstances surrounding the sexual encounters. A reasonable jury further could find that Valley County deliberately acted in conscious disregard of injury to Bilbruck by failing to investigate complaints of sexual misconduct. Sheriff Meier's testimony, the expert reports, and Bilbruck's deposition testimony provide sufficient

evidence to support such a conclusion. The Court declines to grant summary judgment where, as here, material facts remain in dispute.

## CONCLUSION

The Court will deny Bilbruck's motion for partial summary judgment on the application of § 214 of the Restatement Second of Agency. (Doc. 55.) Genuine disputes of material fact exist as to whether Bilbruck was on probation, acting as a confidential informant, or under investigation for criminal activity. Accordingly, Bilbruck failed to establish that Valley County owed the type of non-delegable duty that § 214 covers. The Court also will deny Valley County's motion for summary judgment (Doc. 49) on all of Bilbruck's claims except for Bilbruck's § 1983 claim for failure to train. Genuine disputes of material fact exist as to consent, Valley County's knowledge of the sexual contact and inappropriate behavior of Strommen, and whether Strommen was acting within the scope of his employment.

## ORDER

Accordingly, **IT IS ORDERED**:

1. Bilbruck's Motion for Partial Summary Judgment on § 214 of the Restatement Second of Agency (Doc. 55) is **DENIED**.

2. Valley County's Motion for Summary Judgment (Doc. 49) is **GRANTED** as to any claim brought by Bilbruck under § 1983 for failure to train. Valley County's Motion for Summary Judgment (Doc. 49) is **DENIED** as to the rest of Bilbruck's claims.

DATED this 2nd day of July, 2024.

_____
Brian Morris, Chief District Judge
United States District Court